## Selfridge *against* The Northampton Bank.

Evidence that a bank did not execute and issue certain of its notes until two years after their date, is admissible to show the time of their coming into the hands of a debtor to the bank.

Where a debtor directs the application of a payment to a particular debt, equity will not change that appropriation in favour of another debt.

ERROR to the Common Pleas of *Lehigh* county.

This was an action of debt brought by the Northampton Bank for the use of James Smoyer against the administrator of Mathew Selfridge, deceased, on a bond and mortgage given by Selfridge to the bank, dated 7th September 1836, for the payment of $10,000 in five equal annual payments with interest. The plaintiff claimed to recover $5800 with interest, amount deposited in the bank by Smoyer.

The plaintiff gave in evidence the bond and mortgage on which was endorsed " Interest paid to April 1st 1839." " Interest paid to April 1st 1842."

The plaintiff then gave in evidence the following assignment :

Know all men by these presents, that the Northampton Bank, as collateral security and to secure to James Smoyer the payment of the sum of $5800, deposited by him this day in the Northampton Bank, payable on the 1st day of April 1843, interest from date of deposit till paid, the receipt of said money on the terms above-mentioned is hereby acknowledged, have granted, bargained, assigned and set over, and by these presents do grant, bargain, assign and set over unto the said James Smoyer, his heirs and assigns, the indenture of mortgage given by Mathew Selfridge, dated the 7th September 1836, to the said the Northampton Bank, on a certain brick messuage, &c., which said mortgage was given with a bond in the sum of $20,000, conditioned to pay the said the Northampton Bank, the sum of $10,000 with the lawful interest as by the said bond and mortgage will more fully appear, which said mortgage is on record and recorded, &c., the 12th September 1836, &c. ; together with the rights, members and appurtenances thereunto belonging, and all the estate, right, title and interest therein on the terms aforesaid. To have and to hold all and singular the premises hereby granted and assigned, or mentioned, or intended so to be, unto the said James Smoyer, his heirs and assigns, subject nevertheless to be re-assigned to the said the Northampton Bank on the payment of the said sum of $5800 on the said 1st day of April 1843, as above-mentioned, and subject also to all

the reservations contained in said indenture of mortgage on the part of the said the Northampton Bank in this behalf made.

In witness whereof, the said the Northampton Bank have executed these presents by the signatures of the president and cashier, and affixing hereto the corporate seal of said bank, this 5th day of April 1842.

JOHN RICE, President.

GEORGE KECK, Cashier.

Also the following certificate of deposit:

*Northampton Bank, April 5th,* 1842.

This is to certify that James Smoyer has deposited this day five thousand eight hundred dollars, payable on the 1st day of April 1843, with interest, subject to his check and a re-assignment of a certain bond and mortgage, this day assigned to him by the Northampton Bank.

GEORGE KECK, Cashier.

$5800.

The defendant gave in evidence a bundle of Northampton Bank notes amounting to $12,300, and called Nathan Metzger, who testified that the defendant in April 1843 tendered these notes to George Keck, cashier of that bank, at his house, in payment of the bond and mortgage in suit, and that Keck refused to receive them, but gave no reason. On Keck's refusal the defendant handed the notes to witness, who tied them up with a memorandum, and had kept them in Selfridge & Wilson's fire-proof ever since.

The plaintiff then gave in evidence the following memorandum, dated 13th April 1843, after having proved by Metzger that it was in the defendant's hand-writing, and the same memorandum that he had tied up with the notes:

"Memorandum of $12,300, tendered George Keck, Cashier of the Northampton Bank, April 13th 1843, in payment of the following mortgage, notes, &c., to wit:

"$10,000 in payment of a mortgage of M. Selfridge, deceased, with arrear of interest, which said mortgage, it seems, has been assigned by the bank for the payment of $5800—whereupon $4200 balance of mortgage yet in bank's possession was tendered."

The plaintiff then called George Keck, who testified as follows: "On the very day the bond was assigned to Smoyer, I went up to the bank early in the morning. I there found William Selfridge and Mr Rice together. Selfridge drew a draft on William Wilson of Philadelphia, for $1800, the amount of arrearage of interest on bond and mortgage. Rice passed his receipt for that amount, and on that Smoyer and Mr Wright came in, and Selfridge passed immediately out. Wright, Moser and Smoyer came into bank through the director's door. I think at that time the papers were in Wright's hands. Smoyer's money was counted and deposited on the 5th

VIII. — 41

April 1842. Selfridge went out the same door they came in. It was before bank hours. Smoyer had been there prior to the 5th April, the week before. There was but two and a half years interest due at the time. I don't recollect that anything was said in presence of Metzger about the bond or mortgage having been assigned. These notes are all of the new issue."

The plaintiff then offered to ask the witness when these bank notes were executed, to which the defendant objected, but the court overruled the objection and sealed an exception. The witness then testified as follows: " These notes were executed on the 3d day of February 1843. They are dated January 18th 1841. They are dated back to correspond with the plate. They were taken out of the bank on the same day by Mr Rice for New York and Philadelphia."

The plaintiff further proposed to ask the witness how much Mathew Selfridge individually, and as late partner of the firm of Selfridge & Wilson, was indebted to the Northampton Bank in April 1843. The defendant objected to this offer, but the court overruled the objection and sealed an exception.

The witness then testified that Mathew Selfridge was the drawer and William Wilson the endorser of a note due July 6, 1835, for $2700, upon which two years' interest had been paid; and also of a note due January 3d, 1837, for $5000. That Mathew Selfridge was the drawer of a note due December 10th, 1839, for $1000. That Selfridge & Wilson owed a note for $2968, which was paid by Thomas B. Wilson, the surviving partner, on the 13th June 1843. That Selfridge & Wilson were indebted a note of $1000, due August 20, 1833; also a draft for $1500 on James M. Hirst; also a note for $5000, due November 1st, 1836. That there was due June 13th, 1843, a balance on deposit account of $8164.62, by over-draft. That they were entitled to a credit for a draft on Holland & Co. of $3000.

The witness also stated that on the 1st, 2d or 3d of April 1843 William Selfridge came to his house, the evening he returned from Philadelphia, some eight or ten days before he made the tender. That the bank notes in question were taken by Rice, and hypothecated in Philadelphia and New York. They were not issued at the counter of the bank.

The plaintiff further proposed to ask the witness when these notes first appeared in the market; to which the defendant objected, but the court overruled the objection and sealed an exception. The witness then stated that the first he knew these notes were in market was on the 23d March 1843. On his cross-examination he stated: " On the 1st, 2d or 3d April 1843, Selfridge said he had some $12,000. I asked him to show them to me, and he did. They were the same notes as these. I did not count them. I looked at them. I don't recollect that anything was said about the transfer of the mortgage. I told him I would not re-

ceive the notes, owing to the issue. Objection was to the issue. He had a bundle of notes, I should think as large as these. I think these are the notes. I never notified William Selfridge of these debts or notes anterior to the first tender. This is Mathew Selfridge's bank-book. Balance due Mathew Selfridge, $47.19. The bond and mortgage passed together."

The plaintiff then called a witness, who stated he thought William Selfridge was in the office of the Recorder of Deeds of Lehigh county, some time in the spring of 1843, looking at the record of the deeds and mortgages; witness could not say which. Before that time he had been in the office examining the books. The Recorder testified that William Selfridge had been at the office, looking at the mortgage-books, in the summer and spring of 1843. He could not say whether it was before or after April. The assignment of the bond in suit was entered in one of the mortgage-books.

It appeared that the Northampton Bank closed on the 22d or 23d March 1843, and had not been open since for business; and that it was bankrupt. It appeared, also, that Mathew Selfridge died before the assignment of the bond in suit.

The court charged the jury that every equity which existed in an obligor prior to his receiving notice of the assignment of the bond, against payment of it to the obligee, was a good defence against the assignee. That it was the duty of the assignee to give this notice. That if the debtor, by bond to a bank, gets its notes for payment before notice of the assignment, and tenders them in payment, it is a good defence, and to him is equivalent to payment, if pleaded, proved, and the notes are produced on the trial and brought into court. That whether notice was given to the defendant's administrator before the tender of the notes in question, was a fact for the jury to determine from the evidence. The legal effect of want of notice was a question of law for the court.

The court went on to say :—" Has notice been proved? This is a contested point. The plaintiff relies upon what took place at the bank on the morning of the assignment. The defendant was in the bank, and paid off the interest on the bond. Having done this, he went out; as he went out he met Smoyer and his counsel coming in. There is no proof that anything was said to the defendant by the officers of the bank, while he was in, about the assignment. There is no proof that anything was said to him by Smoyer as they passed each other. They transacted no business together. They had no conversation with each other on any subject. Does this prove notice, or tend to prove it? You will consider it and decide it. The written paper, which was tied up with the notes and is in defendant's hand-writing, is relied on as proof that he had notice. It is said in that paper that *it seems* the bond and mortgage has been assigned. The argument is, that he was

[Selfridge v. The Northampton Bank.]

not then told that they had been assigned, and therefore the conclusion is drawn that he knew it before. You will say how far this proves notice. You will pass upon all the evidence, and decide this fact."

They also charged that so far as there were other debts proved to be due by the estate of Selfridge to the bank, the notes tendered should be applied to them before the debt assigned to Smoyer; and that the fact that the defendant tendered the notes in payment of this particular debt would not prevent its being done. That if the defendant had notice of the assignment before he procured the notes which he tendered, then the defence failed, and their verdict should be for the plaintiff for the full amount of Smoyer's claim. That if such notice was not proved, they should apply the notes tendered to the indebtedness of the testator, in his own right, to the bank at the time of the tender. If this indebtedness absorbed the whole amount of the notes, they should find for the plaintiff the whole amount of Smoyer's claim; if it did not, the residue of the notes should be applied to the debt assigned to Smoyer. If they covered this, the verdict should be for the defendant; if not, for the plaintiff, for such part not covered by the notes.

Both parties excepted to the charge. The defendant assigned the following errors:

1, 2, 3. The court erred in admitting the evidence embraced in the three bills of exception.

4. In leaving to the jury the question of notice of the assignment as a fact for them to determine from the evidence.

5. In charging the jury that if other debts due by the estate of Selfridge to the bank have been proved, then the bank notes tendered should be applied to those debts, and not to the debt assigned to Smoyer.

*Gibons* and *Meredith,* for the plaintiff in error, referred to 12 *Serg. & Rawle* 305; 3 *Watts & Serg.* 553; 6 *Ibid.* 9; *Gilpin* 106; 4 *Watts & Serg.* 19; 3 *P. R.* 405; 6 *Watts* 487; 8 *Watts* 385; 5 *Watts* 49, 275; 10 *Watts* 397; 2 *Watts* 75; 1 *Price* 133; 1 *Rawle* 108.

*Davis* and *Mallery,* contra, cited 12 *Wend.* 356; 6 *Dana* 224; 13 *Mass.* 235; 1 *Halst.* 226; 3 *Halst.* 172; 6 *Conn.* 233; 8 *Ibid.* 505; 5 *Watts & Serg.* 223; 8 *Watts* 260; 9 *Watts* 183; 8 *Watts* 260, 416, 443; 2 *Watts & Serg.* 70; 2 *Watts* 228; 1 *Binn.* 433, 435; 4 *Serg. & Rawle* 175; *Act 28th May* 1715; 19 *Wend.* 397; 6 *Whart.* 233.

The opinion of the Court was delivered by
Rogers, J. — The general principles ruled in the case of *The*

*Northampton Bank* v. *Balliet* (ante 311) apply here. Nothing, therefore, remains but to notice the bills of exception.

1. The court were right in admitting the testimony contained in the 1st bill, because the evidence has a direct bearing on a material question, viz: whether the defendant received the notes on which he relies as a defence before or after notice of the assignment.

2. If a different state of facts existed, the evidence of the indebtedness of Selfridge individually, or as the partner of Wilson, would be material; because, if the defendants had tendered the notes generally, without specifying to which debt the payment should be applied, a court of equity, under the circumstances of this case, would so apply it as to do justice to all parties. But this equitable principle cannot be invoked in aid of the plaintiff, where the debtor himself directs the application of the payment. He has a right, of which he cannot be deprived, to direct which debt, where he owes more than one, shall be paid. This point has been repeatedly ruled, and in a very recent case, where the whole law was reviewed.

We also think the court was wrong in leaving it to the jury to infer notice of the assignment from what took place at the bank the morning of the assignment. The court, it is true, refer to a written paper tied up with the notes, in the handwriting of the defendant, and afterwards refer the whole evidence to the jury. But this does not cure the error; for it is plain, from the charge, that the jury would be warranted in supposing that, aside of all other evidence, they would be justifiable in inferring that the defendant had notice of the assignment. We cannot, however, perceive, in what took place there, a spark of evidence of that material fact.

Judgment reversed, and a *venire de novo* awarded.