## Thacher's Estate

Before Gest, Henderson, Van Dusen, Stearne and Sinkler, JJ.

The facts appear from the adjudication and supplemental adjudication of

HENDERSON, J., Auditing Judge.—Our testator died May 20, 1930, leaving a will duly proven in Ocean County, N. J., and ancillary letters were granted in Philadelphia on June 2, 1930, and John W. Thacher appointed ancillary executor. At the time of his death the decedent was indebted to the Aldine Trust Company in the sum of $29,000, since his death reduced to $16,000, with interest. At the time of his death the decedent had no deposit account at this trust company.

The ancillary executor opened, in the name of the estate, a checking and savings fund account, making withdrawals and additions thereto, until December, 1930, when the institution was closed by the secretary of banking, at which time the checking account had a balance of $436.05 and the savings fund account $5810.78.

This estate is solvent and its only creditor is the secretary of banking for the account of the Aldine Trust Company in the sum of $16,000. The ancillary executor claims to set off the deposit accounts. I am of opinion that this cannot be done and will briefly give my reasons therefor.

I know of no cases in Pennsylvania on this question. Before examining what few cases have been found elsewhere, I observe, to prevent confusion, that some of the cases set up what I will call a doctrine of pseudo "sui generis mutuality," and by this I mean cases in which the set-off has been allowed by way of a short cut and to prevent circumlocution when the court has been convinced that no one can be injured thereby.

Such was the case in People v. California, etc., Trust Co. et al., 168 Cal. 241, 141 Pac. 1181, wherein, at page 249, the court said:

"We refer to these cases as showing that the rule of mutuality is not always controlling in actions by or against personal representatives of an estate which involves its assets, but that it will be departed from in cases where it appears that permitting the setoff to be interposed cannot in any respect embarrass the

administration of the estate or prejudice the rights or interests of any other party interested in its assets.

"We can perceive no reason why the principles of the decisions cited should not be applied to the demands here."

To the same effect is Hibert v. Lang, 165 Pa. 439:

"In general, in order to support a set-off there must be cross demands between the same parties and in the same rights, such as would sustain mutual actions against each other, yet . . . where there is a special equity to be subserved, and no superior equity of third parties will be injured, a set-off will be allowed upon equitable principles, though the case does not come within the language of the statute."

Such a course cannot be followed in the instant case. We must have mutuality in the same right—"sui generis," as it is denominated. It should be observed that all rights are fixed by the closing of the bank and by the death of a depositor, and either happening may be likened to an assignment for the benefit of creditors or parties in interest as the case may be. If our decedent had had a deposit account in this bank at the time of his death and the bank closed the following day, then we would have a mutual relation of debtor and creditor in the same right between the bank and the depositor. A balance between the claims could have been equitably struck and no one could have been injured.

But this situation did not exist. The executor opened the deposit account, made withdrawals and further deposits. This cannot be said to be in the same right; the funds he deposited were derived from converting decedent's assets and were earmarked with a trust for his creditors and distributees. On the other hand, the secretary of banking held the decedent's note for $16,000 in trust for the bank's creditors. The rights of the two groups are not mutual and are certainly not sui generis.

In Laighton et al., Exec'rs, v. Brookline Trust Co., 225 Mass. 458, it appeared that the decedent had a deposit account in the defendant company at the time of his death, and his executors, instead of opening a new account, made further deposits in the old account. The estate was insolvent and the defendant set off its claim for $1900 against the account.

The court said:

"It is well settled that funds on general deposit in a bank are the absolute property of the bank, that the relation between the parties is that of debtor and creditor, and that the bank is entitled to apply the balance of the account due the depositor to the satisfaction of a debt due the bank from the depositor: National Mahaiwe Bank v. Peck, 127 Mass. 298, 301.

"It is equally well settled that ordinarily a bank has a right to apply a deposit toward the payment of its claims against the depositor although the latter or his estate is insolvent: Furber v. Dane, 203 Mass. 108, 117; Wiley v. Bunker Hill National Bank, 183 Mass. 495, 497; Clark v. Northampton National Bank, 160 Mass. 26; Boyden v. Massachusetts Life Insurance Co., 153 Mass. 544; Demmon v. Boylston Bank, 5 Cush. 194.

"We are of opinion that the defendant is entitled to apply the balance of the deposit as it existed at the date of the death of the testator.

"In an action by or against an executor or administrator, the statute (R. L. c. 174, § 6) permits a defendant to set off a claim due to or from the testator or intestate, and the remaining question is, whether the amounts deposited by the plaintiffs after the testator's decease also can be set off in payment of the defendant's claim. The statute is doubtless remedial in its nature and is to be given a broad and liberal construction. Still we are of opinion that it ought not

to be so interpreted as to allow a set-off of that part of the account which has been deposited by the plaintiffs of moneys belonging to the estate."

The amount of the deposit at the date of the death was allowed as a set-off, but as to the moneys improperly deposited after the death the set-off was refused, the court saying (page 460) :

"We think that the right to set-off is limited to the balance of the deposit as it existed at the time of the testator's death. It could not successfully be contended that if, upon the appointment of the plaintiffs as executors, they had opened a new account and made deposits therein, the defendant could have set off its claim against such account. The funds of the estate deposited by the plaintiffs did not belong to the account standing in the name of the depositor, nor could they properly be credited to his account after his decease. Accordingly, they are to be treated as if deposited in the name of the plaintiffs in their representative capacity. The deposits made by the plaintiffs stood upon an entirely different footing than did that part of the account which existed at the date of the testator's death. As to the account as it then stood, the right of the defendant to set-off was unimpaired notwithstanding his death."

To the same effect are Padgett, Admin'x, v. Bank of Mountain View, 141 Mo. App. 374, and Tobey et al., Exec'rs, v. The Manufacturers National Bank, 9 R. I. 236. See, also, Kilvington, Exec'r, v. Stevenson, 125 Eng. Repr. 1164 (see note) ; Schofield et ux., Admin'rs, v. Corbett, 116 Eng. Repr. 666; Mardall v. Thellusson et al., Exec'rs, 119 Eng. Repr. 1127; 57 C. J. 444, 510, 511; Stephens et al., Admin'rs, v. Cotterell, 99 Pa. 188.

The claim of the secretary of banking for the account of the Aldine Trust Company is allowed in the sum of $16,000, with interest.

### Supplemental adjudication

This matter was recommitted to me to consider some further facts contained in a supplemental stipulation of facts filed in this record, together with a detailed account of the administrator of this estate showing all the deposits and withdrawals made by him.

At the former hearing, Mr. Willing, representing the secretary of banking, stated that at the time of his death this decedent had no deposit in the Aldine Trust Company; and the original stipulation of facts was silent on this subject.

Accordingly, in my adjudication, I said: "At the time of his death the decedent had no deposit account at this trust company."

It now appears that the decedent had on deposit in a savings and a checking account at the time of his death $6711.89, and the executor had on deposit when the company closed $5810.78.

The amount on deposit at the time of decedent's death was the initial deposit in the account of the executor. He made about fifty deposits in his two accounts, and over sixty withdrawals.

With this state of the record, I am asked to allow a set-off of the amount on deposit at the death of the decedent. That fund was withdrawn and the decedent's account closed by the executor. It was mingled with the fifty deposits, and this joint fund subjected to sixty withdrawals.

These facts do not even bring the question within the peculiar situation developed in Laighton et al., Exec'rs, v. Brookline Trust Co., 225 Mass. 458, cited in my adjudication. Therein the decedent's account in the trust company was not closed after his death, but the executor was improperly permitted to deposit in the old account and to make withdrawals therefrom. The court said that, as the old account had never been closed, the balance existing at the time of the death could be set off.

The claim for a set-off is dismissed for the reasons assigned in the adjudication.

William Barclay Lex, of Hepburn & Norris, for exceptant.

Joseph K. Willing, contra.

VAN DUSEN, J., December 9, 1932.—Thacher borrowed money from the Aldine Trust Company and gave his demand note. He also had money on deposit there. When he died his executor had the money transferred to an account in the name of the estate, put more money in and drew some out. Then the Aldine Trust Company became insolvent. The secretary of banking in charge presented the note at the audit of the executor's account as a claim against the estate, and the executor asked to set off the amount of money on deposit in the name of the estate. This was refused by the auditing judge, on the ground that the opposing demands were not mutual, or in the same right, and, therefore, the allowance of the set-off would give the estate, as a depositor in the bank, an improper preference over other depositors.

If a man dies insolvent, or a bank or an individual becomes insolvent, and the property of the insolvent passes into the hands of a representative who is to administer the fund for the benefit of all creditors pro rata, it often happens that a creditor of the fund is also a debtor to it at the moment of the insolvency. A bank, for example, holds the note of a customer, and the customer has a deposit account. In such case, the allowance of a set-off gives a preference to the customer at the expense of other creditors of the insolvent bank. Nevertheless, it is held that the set-off may be allowed: Jordan et al. v. Sharlock, 84 Pa. 366; Jack v. Klepser, 196 Pa. 187; Fisher, Commissioner of Banking, v. Davis, 278 Pa. 129; Scott v. Armstrong, 146 U. S. 499. As said in the last case (page 511) : "in the distribution of the assets of insolvents under voluntary or statutory trusts for creditors the set-off of debts due has been universally conceded. The equity of equality among creditors is either found inapplicable to such set-offs or yields to their superior equity."

Unless the set-off exists at the moment of insolvency, it is not allowed. The other party may not set off a note thereafter maturing: Chipman et al. v. Ninth National Bank, 120 Pa. 86; Blum Bros. v. Girard National Bank et al., 248 Pa. 148; Kurtz et al. v. County National Bank, 288 Pa. 472; or a claim thereafter acquired: Dunkin v. Calbraith, 1 Browne 47; Richter v. Selin, 8 S. & R. 425; Thorp v. Wegefarth, 56 Pa. 82. In the present case, the right of set-off is claimed on the facts as they were on the day the bank closed, and nothing has occurred since to alter them.

It is agreed that Thacher, if he had been living, could have set off his deposit against his note. His executor continued to hold the same right, because it existed at the moment of death, just as the bank, at the moment of Thacher's death, and whether he died solvent or insolvent, had and continued to have such a right. The latter situation was one branch of the decision in Laighton et al., Exec'rs, v. Brookline Trust Co., 225 Mass. 458, discussed below. This right of the executor, once acquired, continued to the time of the bank's insolvency, if the facts remained the same, and would, therefore, be enforceable against the receiver of the bank. The facts did not remain the same, as we are dealing with a deposit made by the executor himself—a new item. It is apparent that no more harm is done to the bank's creditors by allowing a set-off to this depositor than would be done by allowing a set-off to any other depositor, and that such a set-off would have a "superior equity" to the equity of other depositors, provided it is a set-off which would be allowed prior to and at the moment of insolvency. To be so allowed, the opposing claims must be in the same right.

This requirement is common to all set-offs. It has nothing to do with the solvency of either side, but with the fact that one party is acting in a representative capacity, and may really be two different parties. One man's property may not be used to pay another man's debt. When an administrator sues for money due to the estate, he may not be met with a debt due by him individually, or by him as administrator of another estate. That would be misappropriating trust funds, and would be impossible whether the estate is solvent or insolvent: Tenant et al. v. Tenant, Admin'r, 110 Pa. 478. The rule of mutuality relates to identity of interest at the time the right of set-off arises, and not to identity of origin. For example, the debtor to an insolvent may set off a claim against the insolvent which did not originally belong to him, but which he had acquired before the insolvency, and, therefore, could have set off at the moment of insolvency: Heppard v. Beylard, 1 Whar. 223; Farmer's Bank v. Penn Bank, 123 Pa. 283; Collins et al. v. McKee, 3 Sad. 213. We have in the case at bar the counterclaims of one fund against another, each with its representative; but it is necessary to examine the nature of the respective claims to see to what extent they are identical in interest on each side.

When a person dies, that which had been a claim against him for a debt becomes a claim against a fund for a dividend. If the claim is thought and spoken of in that way, and the actual facts of the cases are investigated, all the decisions referred to by the auditing judge are consistent with one another in their judgments, and also in the reasons for these judgments, if properly understood.

If the fund is solvent, the dividend is 100 per cent. In such case, the debt due by the decedent (or the 100 per cent. dividend on the debt) may be set off against a debt to the executor incurred after the decedent's death. No harm is done; the allowance of the set-off merely avoids multiplicity of actions. In Hicks, Admin'x, v. National Bank of Northern Liberties, 168 Pa. 638, a bank was sued by the administrator of a solvent estate for a deposit made partly by the decedent and partly by the administrator, and the bank was allowed to set off against the whole a note made by the decedent. In Steinmeyer, Exec'r, v. Ewalt Street Bridge Co., 189 Pa. 145, the executor of a solvent testator sued a corporation for dividends which became due after the testator's death. The corporation was allowed to set off a sum due by the testator in his lifetime for moneys of the corporation received by him as its treasurer. See, also, Davis, Receiver, v. Stover, 58 N. Y. 473. But in Stephens et al., Admin'rs, v. Cotterell, 99 Pa. 188, the administrator of an insolvent estate sold goods of the estate to defendant and then sued for the price. The defendant was not allowed to set off a debt due to him by the decedent. Of course not. His dividend would not be 100 per cent., and he would be getting 100 per cent. at the expense of other creditors of the insolvent estate if he could set off the whole debt. In some of the older cases he was allowed to set off his dividend: Dorsheimer v. Bucher, Admin'r, 7 S. & R. 9; Long v. Penn Ins. Co., 6 Pa. 421.

The same thought is the ground of decision in Tegetmeyer et al., Exec'rs, v. Lumley, 125 Eng. Repr. 1164 (note). The decedent's estate was not insolvent so far as appears, but the case arose at a time when specialty debts were preferred in the distribution of a decedent's estate. (The date is not given, but Lord Mansfield was a member of the court.) The debt which defendant sought to set off was a simple contract debt incurred by the decedent, and the plaintiff administrator sued for the price of goods sold by himself as administrator. The court said that "to allow the set-off would be altering the course of distribution." The same facts are found in Schofield et ux., Admin'x, v. Corbett, 116 Eng. Repr. 666, and Mardall v. Thellusson et al., Exec'rs, 119 Eng. Repr.

1127. There is no opinion in either of these cases, but it was argued by the successful counsel in the latter case that there might be debts of a superior order. That is to say, it did not affirmatively appear that defendant's dividend would be 100 per cent., and harm might be done to other creditors. Counter-suits might not work out the same result as a set-off, and, therefore, the convenience of a set-off could not be resorted to.

The facts were similar in Tobey et al., Exec'rs, v. The Manufacturers National Bank, 9 R. I. 236. An executor deposited money in a bank and then sued for the deposit. The bank attempted to set off a note of the decedent. The opinion states that the estate was insolvent. The set-off was refused for reasons which are independent of that fact, namely, that the executor, having once collected the money, was personally responsible for it to the estate and was really suing in his individual capacity, whereas the set-off was in his representative capacity. This thought occurs in Stephens v. Cotterell, supra, and other Pennsylvania cases. See, also, Akin v. Williamson, infra. It would hardly be accepted today. The insolvency of the estate and the prejudice to other creditors of the estate must have been in the mind of the court, and if the bank's claim had been thought of as a claim for a dividend of less than 100 per cent., instead of for the original debt, the materiality of the insolvency of the estate would immediately have become apparent, and should have been reckoned on in giving the grounds of decision. Of the same sort is Padgett, Admin'x, v. Bank of Mountain View, 141 Mo. App. 374. It does not appear that the estate was insolvent, but neither does it appear that the estate was solvent. The opinion dwells on the lack of mutuality of the opposing claims, and concludes that the bank must "take its chances with other creditors." That is to say, it is not known that the bank's dividend is 100 per cent., and, therefore, the allowance of the set-off may prejudice other creditors. And, finally, Laighton et al., Exec'rs, v. Brookline Trust Co., 225 Mass. 458, the case chiefly relied on by the auditing judge. An executor suffered money deposited by his testator to remain in a bank in testator's name and added other moneys of the estate to the account. When sued for the deposit, the bank attempted to set off a note made by the testator. Though not so stated among the facts, it is evident from the sentence soon to be quoted from the opinion that the estate was insolvent. A set-off was permitted of the money deposited by the testator (see above), a result which is in accord with general principles of set-off in cases of insolvency already discussed: Scott v. Armstrong, and others, supra; because it existed at the death of the insolvent. But a set-off of the note against the money deposited by the executor was refused. The opinion dwells on the lack of mutuality between the opposing claims as a result of their different origins, and concludes that "to hold otherwise would permit the defendant to obtain an inequitable preference which would be unjust to other creditors." That is to say, the bank's dividend will not be 100 per cent., and, therefore, the allowance of the set-off as claimed will certainly prejudice other creditors. The difference in origin is material only because it reveals a difference in interest.

In all these cases the set-off was asserted against an insolvent estate, and the objection to the set-off was that matters occurring after the death of the insolvent (the deposit by the executor) would thereby be permitted to work a preference among the creditors of the insolvent. In People v. California Safe Deposit and Trust Co. et al., 168 Cal. 241, 141 Pac. 1181, the estate was solvent; the executor deposited money of the estate in a bank which became insolvent; and the bank held a note of the testator. This is the exact case at bar. In an excellent opinion, too long to quote, the court held that the opposing claims were in the same right and that the set-off should be allowed. Applying the test

which we have been applying to all the cases, the dividend from the estate was 100 per cent., and the equity of the estate as holder of a cross-demand at the time of the insolvency of the bank was superior to the equity of the bank's creditors to pro rata distribution of its assets. The same result was reached in Gardner, Trustee, v. Chicago Title and Trust Co., Receiver, 261 U. S. 453. The depositor was a bankrupt estate and not a solvent estate. The only difference that made was that the natural equity of the depositor to set off his deposit was asserted against a claim, not for a 100 per cent. dividend, but for a 50 per cent. or 60 per cent. dividend, or whatever the figure might be, and the set-off was carried out as a practical matter by denying the insolvent bank any dividend at all until the deposit by the trustee in bankruptcy was made good. The court, Holmes, J., put the decision on substantially the ground just stated, and no question was even suggested as to whether the opposing claims were mutual or in the same right in the technical sense which we have been discussing.

The Gardner case was cited in Peurifoy, Receiver, v. Gamble, Receiver, 145 S. C. 1, 142 S. E. 788, on the same state of facts, but the court refused to follow it, placing its decision squarely on the supposed lack of mutuality between the two claims. There was a long and vigorous dissent. Akin v. Williamson, 35 S. W. 569 (Tenn.), is also the same in facts as the Gardner case and contrary in conclusion. The opinion dwells on the supposed lack of mutuality, and also on the personal responsibility of the receiver for the bank deposit which he made, so that he was regarded as suing virtually in his individual capacity.

The California and United States Supreme Court cases seem to us to be right, and should be followed. They are consistent with all the other cases to which we have been referred (except the Peurifoy and Akin cases), and the result of the cases is: That where one party to a set-off is insolvent, the set-off is allowed though it gives one creditor of the insolvent a preference over the others, because of the "superior equity" of the right to strike a balance of accounts; that this right of set-off is confined to the facts as they exist at the moment of insolvency; that nothing which has happened since the Aldine Trust Company closed is an element in the set-off claimed here; that the doctrine of mutuality requires identity of interest and not identity of origin; that the real interest behind Thacher's executor in the claim by and against him is the solvent fund; that the opposing claims are, first, a claim for a dividend by the holder of Thacher's note against Thacher's estate, and, second, a claim by Thacher's estate against the holder of the note, and, therefore, the claims are mutual; that before the insolvency of the Aldine, and at the moment thereof, the 100 per cent. dividend due by the estate could have been set off against the deposit made by the estate, and vice versa; and that, therefore, the "superior equity" of a right to set-off exists in Thacher's estate as in any other depositor.

Since writing the foregoing, our attention has been called to a case in which set-off was refused for lack of mutuality, and the test applied was identity of interest: Gordon, Secretary of Banking, v. Union Trust Co., 308 Pa. 493. In that case trust company A had deposited miscellaneous trust funds in trust company B under the title "A Company Trust Funds," and B had made a deposit of like funds with A under the title "B Company Trust Funds;" and A had become insolvent. On their face, both funds were alike, but behind each were a number of different interests. The court said: "The names in which suit could be brought and defended furnish an indication, but are not the only criterion, of the right of set-off. To whom do the funds really belong? Mutuality of right in a set-off is not circumscribed by the 'right to bring an action,' but the broader question may be and generally is of importance. Whose money or

claim is proposed to be used as a set-off? This is the true equitable principle which governs such questions."

Exceptions sustained, and the adjudication is modified by reducing the claim of the Aldine Trust Company, in possession of the secretary of banking, to $9753.17, with interest from the day the Aldine Trust Company was closed, and interest on $16,000 to that day, in which amount the claim is allowed. As so modified, the adjudication is confirmed absolutely.

HENDERSON, J., dissenting.—I dissent for the reasons given in the adjudication, which are further supported by the reasoning of Mr. Justice Kephart in Gordon v. Union Trust Co., 308 Pa. 493.

In the instant case, the death of Thacher was equivalent to an assignment for the benefit of creditors and other parties in interest: Strouse v. Lawrence, Admin'x, 160 Pa. 421. Likewise, the insolvency of the bank fixed all rights of its creditors.

The account of the decedent was closed and reduced to the possession of the ancillary executor, scores of deposits and withdrawals were made, and this fund is held in trust for his creditors and distributees at the domicile.

Likewise, upon the insolvency of the bank the note of this decedent passed to the secretary of banking in trust for the creditors of the bank.

The funds held in trust for the creditors and parties in interest in the Thacher estate cannot be set off against funds held in trust for the creditors of the bank. See Laighton et al., Exec'rs, v. Brookline Trust Co., 225 Mass. 458.

I would dismiss the exceptions.