**Kramer v. Sowers**

C.P. of Carbon County, no. 93-2083.

*Roger Cameron,* for plaintiffs.
*Michael J. Garfield,* for defendants.

LAVELLE, *P.J.,* March 3, 1995—Defendants/petitioners, Charles W. Sowers and Jeanne M. Sowers, his wife, are asking this court to open a judgment which plaintiffs/respondents William J. Kramer, Jr. and Joseph M. Mangeney, K&M, confessed against them in the sum of $155,962.53 on October 5, 1993. Depositions have been taken pursuant to Pa.R.C.P. 209 and they have been filed of record.

On November 10, 1993 execution on the judgment was stayed by court order upon Sowers depositing $120,000 in escrow with the prothonotary. On August 29, 1994, after Sowers sold a Montgomery County property, they deposited an additional $60,000 in escrow with the Carbon County Prothonotary. After reviewing the extensive briefs of counsel, the depositions, and counsels' oral arguments we make, in narrative form, the following:

## FINDINGS OF FACTS

On or about May 28, 1992, William J. Kramer Jr., Susan Kramer, Joseph M. Mangeney and Eileen F. Mangeney, sellers, entered into an agreement of sale with Sowers for the sale of a residential property known as Lot E-17, Linden Drive, Split Rock at Lake Harmony, Kidder Township, Carbon County, Pennsylvania. The agreement of sale specified a purchase price of $400,000 and provided for a mortgage contingency of $250,000, but otherwise contained no other financing contingencies. The agreement of sale also contained a "one year warranty" clause. Section 16 of the agreement of sale further provided that the agreement of sale represented the entire agreement

between the sellers and Sowers, and that there were no other agreements or understandings between the parties.

Because K&M knew that the purchase of the Split Rock property would create a cash flow problem for Sowers, and Sowers represented that they intended to sell the Hazard Run property as soon as possible, K&M orally agreed to make a $150,000 loan to Sowers after settlement on the sale of the Split Rock property. The agreement of sale that was executed between the sellers and Sowers, however, did not mention the $150,000 loan. At all times up to and including settlement on the Split Rock property, Sowers and their counsel insisted that the $150,000 loan be kept separate from the transactions surrounding the purchase of the Split Rock property. This was necessary in order to avoid any conflicts with a loan application and related affidavits and documents which Sowers were submitting to Merrill Lynch for a $250,000 mortgage loan envisioned in the agreement of sale.

Settlement on the purchase of the Split Rock property by Sowers was held in Stroudsburg, Pennsylvania on August 20, 1992. At settlement, sellers tendered a deed for the Split Rock property to the settlement officer for recording; sellers were paid the full purchase price specified in the agreement of sale, including Sowers' check for $150,000 representing the amount needed to close on the Split Rock property.

On or about August 21, 1992 following settlement between the sellers and Sowers on the Split Rock property, K&M and Sowers met to consummate the $150,000 loan. Fulfilling their earlier oral undertaking to Sowers, K&M made the $150,000 loan to Sowers in exchange for the note and the mortgage. These loan documents were issued

to K&M, not to the sellers. Moreover, the $150,000 loan was secured by Sowers' property located on Hazard Run Road in Lake Harmony, Kidder Township, Carbon County, Pennsylvania.

On June 29, 1993, counsel for K&M sent a letter to Andrew Knowlton, Esquire, reminding Attorney Knowlton that the note was due and payable by his clients on August 20, 1993. Neither Sowers nor their counsel responded to this letter until the middle of August, 1993, at which time defendant Charles Sowers contacted plaintiff William Kramer. Defendant Charles Sowers claimed that he was short of cash due to his failure to sell the Hazard Run property, and accordingly was unable to pay the note when due. Sowers further asserted that he believed that he was not obligated to repay the principal amount of the note until he sold the Hazard Run property, provided that he paid interest on the note from and after August 20, 1993. Plaintiff Kramer urged defendant Charles Sowers to examine the note and the mortgage, as these documents were quite explicit that the $150,000 loan was due and payable in full on August 20, 1993, without right of extension.

K&M's counsel on August 16, 1993 sent a second reminder notice concerning the due date of the note directly to Sowers by certified mail.

The August 20, 1993 maturity date of the note passed without payment or communication from Sowers. On August 25, 1993 Attorney Knowlton first contacted K&M's counsel and stated that he had just been retained by Sowers in connection with the present default situation under the note. During this conversation he reiterated defendant Charles Sowers' belief that the maturity of the note could

be extended until the Hazard Run property was sold, provided that interest was paid during this extension period, an assertion which Attorney Knowlton commemorated in a letter dated August 27, 1993 to K&M's counsel. By letter dated August 27, Attorney Knowlton stated that Sowers had obtained estimates regarding breach of warranty claims related to the Split Rock property in the neighborhood of $25,000.

Judgment by confession was finally entered on the note after more than a month of discussions failed to produce a proposal from Sowers to repay the note. In accordance with the terms of the note, judgment in favor of K&M and against Sowers was confessed on October 6, 1993 for principal, interest and attorneys' fees in the amount of $155,962.53.

## DISCUSSION

"To open a confessed judgment, a party must act promptly, allege a meritorious defense, and present sufficient evidence of that defense to require submission of the issues to a jury." *Bell Federal Savings and Loan Association of Bellevue v. Laura Lanes Inc.,* 291 Pa. Super. 395, 398, 435 A.2d 1285, 1286 (1981). "The petitioning party has the burden of producing sufficient evidence to substantiate its alleged defenses. . . . *America Corp. v. Cascerceri,* 255 Pa. Super. 574, 580 n.6, 389 A.2d 126, 129 n.6 (1978); *Instapak Corp. v. S. Weisbrod Lamp and Shade Co. Inc.,* 248 Pa. Super. 176, 181, 374 A.2d 1376, 1381 (1977). The defenses asserted must be valid." *Laura Lanes, supra* at 398-99, 435 A.2d at 1286-87.

Sowers' alleged defenses do not constitute "valid defenses" and lack the evidentiary basis required to submit an issue to the jury. Therefore, the petition to open the judgment must be denied.

Viewing the evidence in the light most favorable to petitioners, they have, at best, an unliquidated claim against William J. Kramer, Jr., and Susan Kramer and Joseph M. Mangeney and Eileen F. Mangeney for alleged defects in the Split Rock property which constituted an alleged breach of warranty under the agreement of sale. The petition to open asks this court to allow Sowers to advance a breach of warranty claim which is yet to be litigated or liquidated and set it off against K&M's judgment. The applicable law makes it clear to this court that we cannot do that. The prospect of an uncertain judgment tomorrow does not excuse petitioners from meeting their clear and certain obligation today.

"The rule is well-settled that the existence of an unliquidated setoff or counterclaim is not ground for opening a judgment. In *Thorp v. Wegefarth,* 56 Pa. 82, 85 [1867], this court said: 'To a judgment there can be no setoff of a debt not in judgment. One judgment may be set off against another, through the equitable powers of the court but to a judgment ripe for execution, there can be but one answer, to wit, payment pure and simple.' " *Harrison v. Stoeckert,* 369 Pa. 143, 146, 85 A.2d 154, 155 (1952). (citations omitted) See also, *G.A.C. Credit Corporation v. Acme Accordian Studios Inc.,* 220 Pa. Super. 148, 286 A.2d 678 (1971).

It is also clear from the facts that the instant judgment is based on a loan separate and independent of the Split Rock property purchase and the parties intended it to be independent.

The provisions of the agreement of sale as well as the settlement sheet from the closing further establish that the sale of the Split Rock property was a separate transaction, involving separate parties, from the $150,000 loan. The agreement of sale provides for a mortgage contingency of $250,000, but otherwise contains no other financing contingencies. The settlement sheet confirms that the only financing obtained by the defendants for the purchase of the Split Rock property was the mortgage loan that was obtained from Merrill Lynch. The sale of the Split Rock property was fully closed with the purchase price being paid in full, and the deed being delivered to the settlement officer for recording, before the plaintiffs and defendants met to consummate the personal loan.

The parties to the note are not identical to the parties to the agreement of sale. The note was executed by Charles and Jeanne Sowers to evidence a personal loan made to them by William Kramer and Joseph Mangeney. Susan Kramer and Eileen Mangeney were parties to the agreement of the sale, but not to the note or the mortgage.

Additionally, the note signed by Sowers to evidence the $150,000 loan and upon which K&M confessed judgment provides in pertinent part:

"Maker(s) . . . agree that the liability of each of them shall be *unconditional* without regard to the liability of any other party . . . ."

Thus, Sowers are bound by contract, having previously agreed that their obligation to repay the $150,000 loan was unconditional, regardless of any setoff to which they might otherwise be entitled.

In *Laura Lanes, supra,* appellant borrowed $570,000 to finance a bowling alley and restaurant and signed a

mortgage note containing standard acceleration and confession of judgment clauses. Appellant petitioned to open the judgment that was entered by confession on the grounds that, *inter alia,* the lender had "breached the mortgage by obtaining insufficient insurance on the premises, thus excusing appellant from a duty to pay the mortgage note." *Laura Lanes, supra* at 400, 435 A.2d at 1287. The court held that even if the lender was obligated to obtain insurance, this obligation was not a condition precedent to appellants' duty to repay the loan according to the terms of the note. *Id.* at 401, 435 A.2d at 1288. In the instant case, the defense alleged by defendants arises out of a separate instrument (the agreement of sale) from the instrument under which judgment was confessed (the note). The note specifically states that Sowers' liability thereunder is unconditional, and contains no language that conceivably could be interpreted to provide evidence that the alleged warranty obligation of the sellers under the agreement of sale was a condition precedent to Sowers' obligation to repay the $150,000 loan to K&M according to the terms of the note. Both the facts and the law compel the conclusion that Sowers have no defense to the instant judgment.

For the reasons set forth herein, we enter the following:

## ORDER

And now, March 3, 1995, it is hereby ordered and decreed that the petition to open judgment is hereby denied and dismissed.

The prothonotary is hereby directed to release the $180,000 funds on deposit to plaintiffs, Kramer and Mangeney towards payment of the judgment of record.

Costs on petitioners.